IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

K.G.,[1]

        Plaintiff,

v.                                                    Case No. 18-1283-JWB

NANCY BERRYHILL,
*Acting Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for social security disability benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 11, 12, 13.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the

claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

**II. History of Case**

*A. Summary of the evidence.*

In discussing his findings, the ALJ reviewed the testimony and the medical evidence.[2] Plaintiff has a significant history of treatment for mental health that dates back to 1995. Plaintiff has a history of two mental health hospitalizations and three suicide attempts. In February 2014, Plaintiff sought treatment for panic attacks and saw Mariam Njoku, A.P.R.N., at Comcare. The notes reflect that Plaintiff reported that her panic attacks were worsening; she also suffered mood instability, and depression. (Tr. at 679.) Plaintiff was diagnosed with bipolar disorder, post-traumatic stress disorder, and personality disorder. Plaintiff was started on medication and a treatment plan. (Tr. at 683-84.) On March 27, 2014, Plaintiff saw German Gonzalez, M.D. for medication management at Comcare. She reported that she was having fewer symptoms with the medications. (Tr. at 685.) Dr. Gonzalez noted that her mood was neutral, her affect was congruent and full, her concentration was intact, her thought form was logical, and her insight and judgment were fair. (Tr. at 687.)

---

[2] Because Plaintiff does not object to the ALJ's decision regarding her physical impairments, the discussion on those impairments will be limited.

3

On June 27, 2014, Plaintiff again saw Dr. Gonzalez. Plaintiff reported that she had not been working, was having mood swings, and could not concentrate on task. Dr. Gonzalez recommended that Plaintiff return to work in one week. (Tr. at 692.) Again, Dr. Gonzalez noted that her mood was neutral, her affect was congruent and full, her concentration was intact, her thought form was logical, and her insight and judgment were fair. Plaintiff missed her appointment with Dr. Gonzalez in September 2014. (Tr. at 697.)

In December 2014, Plaintiff reported that her medications were not working but that she had previously been doing better on Buproprion and Lexapro. Plaintiff reported that she had mood swings. Dr. Gonzalez adjusted her medications. (Tr. at 700.) Again, Dr. Gonzalez noted that her mood was neutral, her affect was congruent and full, her concentration was intact, her thought form was logical, and her insight and judgment were fair. Plaintiff's records note that Plaintiff next saw Dr. Gonzalez on May 1, 2015. The records reflect that Plaintiff reported mood swings and getting angry easily. Plaintiff stated that she did not want to take any medications that would make her gain weight. Dr. Gonzalez examined Plaintiff and found that her mood was neutral, and her affect was congruent and full. Plaintiff's memory, attention and concentration were intact and her thought form was logical. (Tr. at 19.)

Plaintiff also participated in therapy with Kezia Ramey, L.M.S.W., at Comcare. On February 8, 2016, Plaintiff's records entered by Ramey note that she was depressed, just wanted to be alone and sleep. (Tr. at 940.) On February 10, 2016, Plaintiff met with Dr. Gonzalez for a medication management appointment. According to the treatment note, Plaintiff was doing well on certain medications and reported that she was complying with the medications. (Tr. at 934.) Again, Dr. Gonzalez noted that her mood was neutral, her affect was congruent and full, her concentration was intact, her thought form was logical, and her insight and judgment were fair.

4

(Tr. at 938.) On that same date, Dr. Gonzalez completed a medical source statement. In that opinion, Dr. Gonzalez found that Plaintiff was moderately limited or markedly limited in categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. at 729-30.) Dr. Gonzalez also opined that Plaintiff would miss four days of work per month and be off task 25% of the time.

Plaintiff also had individual therapy with Amanda Vann during early 2017. During these sessions, Plaintiff reported depression, feeling hopeless, and having suicidal ideations. (Tr. at 861, 863, 865.) On May 8, 2017, Kayla Del Rio, A.P.R.N, at the University of Kansas, completed a medical source statement. In the opinion, Del Rio opined that Plaintiff would be off task at work 25% of the time, was incapable of low stress work and would miss more than four days of work per month. (Tr. at 1010.) Del Rio further opined that Plaintiff's panic attacks resulted in a complete inability to function independently outside of the home. (Tr. at 1012.)

A state agency psychologist, Lauren Cohen, Ph.D., reviewed the record and opined that Plaintiff had the ability to understand, remember and carry out short and simple instructions. Dr. Cohen opined that due to Plaintiff's mood changes, she would do best with work that does not involve the public and only requires incidental interactions with co-workers. (Tr. at 21.)

Plaintiff testified at the hearing. Plaintiff stated that she had significant limitations due to anxiety and that she suffers panic attacks that can last up to a whole day. Plaintiff further testified that she has mood swings, difficulty with concentration, and memory problems. Plaintiff does go shopping, visits family, and goes to appointments. (Tr. at 266.) The ALJ determined that Plaintiff's testimony regarding the intensity, persistence and limiting effects of the symptoms was not entirely consistent with the medical evidence and other evidence. Therefore, the testimony

5

was considered to the extent that it could be consistent with other objective medical evidence. (Tr. at 18.)

*B. ALJ Ruling*. In April 2015, Plaintiff filed an application for disability and disability insurance benefits. Plaintiff also protectively filed an application for supplemental security income benefits. Plaintiff alleged disability onset of March 25, 2015. Her claim was denied initially by the agency on July 13, 2015, and upon reconsideration on October 23, 2015. She then requested an evidentiary hearing, which was held before ALJ David Page on June 22, 2017. The ALJ determined that Plaintiff was not disabled within the meaning of the Act.

In ruling on Plaintiff's claim, the ALJ noted at step one that Plaintiff had not engaged in substantial gainful employment since March 25, 2015, the onset date. At step two, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease; status-post fusion C5-C6 and C6-C7; degenerative joint disease, post-traumatic stress disorder, bipolar disorder, and unspecified personality disorder. At step three, the ALJ found Plaintiff did not have an impairment that met one of the regulatory listings. In so finding, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information; moderate limitations in her ability to adapt or manage herself; moderate limitations in concentration, persistence, and pace; and marked limitations in interacting with others. (Tr. at 16.)

The ALJ determined that Plaintiff had the RFC to perform light work with the following limitations: lift and carry 10 pounds frequently and 20 pounds occasionally; standing and/or walking 6 hours in an 8-hour workday for a maximum of 20 minutes at a time; push and/or pull 20 pounds occasionally and 10 pounds frequently; perform simple, routine tasks involving only simple work-related decisions; occasionally interact with co-workers; no interactions with the general public. (Tr. at 17.) The ALJ essentially adopted the RFC recommended by Dr. Cohen.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. at 23.) At step five, the ALJ found Plaintiff could perform jobs that exist in substantial numbers in the national economy. (Tr. at 23-24.) The ALJ cited testimony by a vocational expert that a person with Plaintiff's RFC could perform certain light exertional level jobs. The ALJ indicated that those positions included office helper, mail clerk, and sub assembler, electrical. (Tr. at 24.)

**III. Analysis**

Plaintiff argues that the ALJ erred by improperly weighing the medical opinions and asserts that the RFC is not supported by substantial evidence. The arguments will be addressed in turn.

Plaintiff contends that the ALJ erred by giving the opinion of Dr. Gonzalez little weight and failing to provide sufficient reasons for the weight assigned. "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.'" *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). If one of the facts are lacking, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927." *Id.* (quotation omitted). The Tenth Circuit identified those factors as including:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

7

*Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). And, "[a]fter considering the pertinent factors, the ALJ must give good reasons in [the] ... decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation omitted). The ALJ does not need to explicitly discuss every factor, but the "record must reflect that the ALJ considered every factor in the weight calculation." *Andersen v. Astrue*, 319 F. App'x 712, 718 (10th Cir. 2009). In this case, the ALJ did not explicitly discuss the factors. The ALJ did state that he considered the "opinion evidence in accordance with 20 CFR 404.1527." (Tr. at 17.) The Tenth Circuit has held that this is sufficient when the court also determines that the ALJ has "provided good reasons for the weight he gave to the medical source opinions." *Endriss v. Astrue*, 506 F. App'x 772, 775 (10th Cir. 2012). The ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted).

The reason that a treating physician's opinion is given such weight is "because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)). "In all cases, the regulations require that the ALJ give good reasons in the notice of determination or opinion for the weight that is given the physician's opinion." *Id.* The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (quotation and citation omitted). A treating physician is ordinarily entitled to

more weight than an agency physician who has never seen the claimant. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

Regarding Dr. Gonzalez, the ALJ noted that Dr. Gonzalez gave Plaintiff moderate to marked limitations in all 20 areas on the form. Also, he opined that Plaintiff would miss work four days per month and be off task 25 percent of the time. The ALJ stated that a treating source's opinion must be given controlling weight if it is well supported and consistent with the evidence. The ALJ then stated that "the opinion of Dr. Gonzalez is afforded little weight." (Tr. at 22.) The ALJ held that the opinion was without support from other evidence, Dr. Gonzalez did not provide an explanation and his treatment notes did not substantiate such limitations. The ALJ noted that Plaintiff's GAF scores indicated that she has "serious symptoms in social, occupation, or school functioning" but that her scores are not commensurate with the objective findings. (*Id.*) The ALJ noted that on February 10, 2016, Plaintiff was doing well on her medication, her affect was congruent and full, and her mood was neutral. The ALJ concluded that "these findings are inconsistent with Dr. Gonzalez's noted marked limitations. Because the opinion of Dr. Gonzalez lacks support from treatment notes or objective findings and is not consistent with the other evidence of record, it is given little weight." (Tr. at 22.)

Plaintiff argues that the ALJ's reason for affording little weight to Dr. Gonzalez's opinion was not sufficiently explained because the ALJ only cited to one specific treatment note. Although the ALJ only cited one specific visit in his discussion of the weight of the opinion, the ALJ also noted that the opinion of Dr. Gonzalez lacked support from the treatment notes and was not consistent with the other evidence. The ALJ's opinion identifies other treatment notes that support this conclusion. For example, the ALJ noted that on February 1, 2017, Dr. Gonzalez noted that Plaintiff's mood was stable and her anxiety was under control. (Tr. at 20.) The ALJ also noted

9

that her memory was intact and her thought form was logical. (*Id.*) He also cited a visit with an APRN on July 1, 2016, and noted that Plaintiff had denied any anxiety or depression. On that visit, she was alert and oriented, had intact judgment and insight, and appropriate mood and affect. (*Id.*) Also, as pointed out by the government and acknowledged by Plaintiff, Dr. Gonzalez's notes consistently show that Plaintiff's mood was neutral, her affect was congruent and full, her concentration was intact, her thought form was logical, and her insight and judgment were fair. Therefore, although one treatment note was cited, it was not an isolated finding. Although Dr. Gonzalez was the treating psychiatrist, his notes do not support the extreme limitations in his opinion.

Although Plaintiff argues that the therapy notes show that Plaintiff was depressed, moody, and having hallucinations (Doc. 13 at 2), the ALJ is entitled to resolve any evidentiary conflict, to the extent this is a conflict. *Allman v. Colvin*, 813 F.3d 1326, 1332–33 (10th Cir. 2016). Plaintiff does not cite to medical records that would support the work limitations opined by Dr. Gonzalez. Based on the normal findings by Dr. Gonzalez during his two-year treatment of Plaintiff, substantial evidence supports the ALJ's conclusion that Dr. Gonzalez's opinion was inconsistent with the medical records. Therefore, the court finds that the ALJ appropriately determined that Dr. Gonzalez's opinion was not supported by the evidence.

Plaintiff further asserts that the ALJ's findings are internally inconsistent and the ALJ failed to weigh all of Dr. Gonzalez's opinions. As noted, Dr. Gonzalez opined that Plaintiff had marked limitations in several areas and moderate limitations in others. The ALJ stated that Dr. Gonzalez's opinions regarding Plaintiff's marked limitations were not supported by the record. Plaintiff asserts that the ALJ's finding at step 3, that Plaintiff has marked limitations in interacting with others, conflicts with his decision discounting Dr. Gonzalez's opinion. Plaintiff essentially

contends that the ALJ gave weight to this opinion without explicitly saying as such. Dr. Cohen had opined that Plaintiff only had moderate limitations in this area. (R. at 16, 91.) Plaintiff asserts that this finding at step 3 required the ALJ to make additional findings. The court disagrees. "Mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps." *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013). The ALJ stated that he would account for the step 3 limitations in the RFC by limiting her interaction with co-workers and the public. The RFC includes those limitations. Based on review of the ALJ's decision, the court does not find that the ALJ's determination at step 3 is inconsistent with his findings at step 4 or his weighing of Dr. Gonzalez's opinion.

Plaintiff further asserts that the ALJ erred in failing to explain whether the moderate limitations opined by Dr. Gonzalez were rejected or adopted. The ALJ assigned Dr. Gonzalez's opinion little weight because it was inconsistent with his own treatment records and failed to provide an explanation. While the ALJ did not discuss all 20 areas marked on the form completed by Dr. Gonzalez, the court finds that the ALJ's decision as a whole makes clear that he gave weight to Dr. Gonzalez's opinion to the extent that it was consistent with Dr. Cohen's opinion and the record. *Zumwalt v. Astrue*, 220 F. App'x 770, 780 (10th Cir. 2007).

Finally, Plaintiff argues that the ALJ was required to provide a more thorough discussion of Dr. Gonzalez's opinion because it was consistent with Ms. Del Rio's opinion. Plaintiff cites to *Kinnard v. Berryhill*, No. 17-1004-JWL, 2017 WL 5731291, at *6 (D. Kan. Nov. 28, 2017), in support of her position. The page cited by Plaintiff states that "it becomes more important for the ALJ…[to] point to specific contrary or inconsistent evidence, and to explain why that record evidence which supports those medical source opinions is less persuasive." *Id.* The ALJ pointed to specific examples in the record to support his position that Dr. Gonzalez's opinion was

11

inconsistent with his treatment notes and the record. The ALJ also pointed to specific records in finding that Ms. Del Rio's opinions regarding Plaintiff's mental health were given little weight. Specifically, Ms. Del Rio did not provide mental health treatment to Plaintiff and Plaintiff consistently denied anxiety and depression during Ms. Del Rio's treatment for Plaintiff's physical health. Therefore, the ALJ sufficiently explained the weight that he gave Ms. Del Rio's opinion and Dr. Gonzalez's opinion.

Although the record in this matter contains some support for the limitations found by Dr. Gonzalez, it also points toward a finding that Dr. Gonzalez's records do not support the limitations he opined. The court may not reweigh the evidence in determining whether the ALJ properly weighed an opinion. *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). The court finds that the ALJ has provided good reason for assigning little weight to the opinions by both Dr. Gonzalez and Ms. Del Rio. The ALJ's weighing of the opinions of Dr. Gonzalez and Ms. Del Rio was consistent with the legal standards of the Act.

**IV. Conclusion**

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED this 18th day of April, 2019.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE